# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

ORLANDO SHIVER,                     )
#344878,                            )
                                    )    CIVIL ACTION NO. 9:14-4412-BHH-BM
                Petitioner,         )
                                    )
v.                                  )    **REPORT AND RECOMMENDATION**
                                    )
WARDEN OF KIRKLAND                  )
INSTITUTION,                        )
                                    )
                Respondent.         )
_____     )

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on November 13, 2015.[1]

The Respondent filed a return and motion for summary judgment on March 10, 2015. As the Petitioner is proceeding pro se, a Roseboro order was entered on March 11, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. No response was received, resulting in a Report and Recommendation for dismissal being entered on April 21, 2015.

In an objection filed May 4, 2015, Petitioner argued that he had responded to the

_____

[1]Since there is no delivery date to the prison mail room, Petitioner has been given the benefit of the date he signed his Petition as the filing date. Cf. Houston v. Lack, 487 U.S. 266, 270-276 (1988). It is also noted that the postmark date on the Petition is the same date as the date Petitioner signed his Petition.



1

Respondent's motion (apparently he had filed a memorandum in opposition to summary judgment with the state court in Richland County), and then presented his reasons for opposition to summary judgment in his objection. See Court Docket No. 24. The Report and Recommendation was thereafter vacated on January 5, 2016, and the file was returned to the undersigned. By Order filed January 6, 2016, Petitioner was given fifteen (15) additional days to supplement his arguments, if he chose to do so. That period of time has now expired, with no additional filings having been received from either party.

This matter is now before the Court for disposition.[2]

### Procedural History

Petitioner was indicted in Richland County in July 2010 for Assault and Battery with Intent to Kill (ABWIK) [Indictment No. 10-GS-40-2138]; Criminal Domestic Violence of a High and Aggravated Nature [Indictment No. 10-GS-40-2139]; and Assault and Battery with Intent to Kill (ABWIK) [Indictment No. 10-GS-40-2140]. (R.pp. 104-115). Petitioner was represented by George McElveen, Esquire.

On February 22, 2011, Petitioner pled guilty to one count of ABWIK, one count of the lesser included offense of Criminal Domestic Violence 2nd Offense, and, pursuant to North Carolina v. Alford,[3] to the lesser included offense of Assault and Battery of a High and Aggravated Nature (ABHAN). (R.pp. 1-27). The plea was entered pursuant to a negotiated plea/sentence

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]400 U.S. 25 (1970).

2



providing that Petitioner would receive between twelve (12) and twenty (20) years on all three (3) charges, to run concurrently. (R.pp. 4-5). The plea judge accepted the negotiated plea/sentence and sentenced the Petitioner to eighteen (18) years confinement on the charge of ABWIK, ten (10) years on the charge of ABHAN, and one (1) year on the charge of Criminal Domestic Violence 2nd Offense, all to run concurrent. (R.pp. 26-27). (R.p. 27). Petitioner did not appeal his guilty plea convictions and/or sentences.

On April 26, 2011 (dated April 13, 2011), Petitioner filed an application for post-conviction relief ("APCR") in state circuit court; Shiver v. State of South Carolina, No. 2011-CP-40-2739; raising the following issues:

**Ground One**: Ineffective Assistance of Counsel.

**Ground Two:** Never should have been charged with 2 counts of ABWIK.

**Ground Three:** Involuntary Guilty Plea.

(R.p. 30).

Petitioner was represented in his APCR by Tristan Shaffer, Esquire, and an evidentiary hearing was held on Petitioner's application on August 17, 2012. (R.pp. 40-92). In an order filed February 13, 2013 (dated January 10, 2013), the PCR judge denied relief on the APCR in its entirety. (R.pp. 94-103).

Petitioner then filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Carmen V. Ganjehsani, Appellate Defender of the South Carolina Office of Appellate Defense, who raised the following issues:

**Ground One:** Whether the PCR court erred in finding plea counsel provided effective assistance of counsel where plea counsel failed to file a motion to reconsider Petitioner's sentence after Petitioner both called and wrote his plea counsel asking his plea counsel to file such a motion and plea counsel had received new information that



3

the victim would have been satisified with a much lesser sentence?

**Ground Two:** Whether the PCR court erred in finding Petitioner knowingly, voluntarily, and intelligently pled guilty where plea counsel coerced Petitioner into pleading guilty by informing Petitioner on the day of the hearing, to which Petitioner arrived not knowing if he was showing up for a trial or a plea hearing, that plea counsel would not go forward with a trial for Petitioner even though Petitioner had a defense to the assault and battery with intent to kill charge?

See Petition, p. 2 (Court Docket No. 18-2, p. 3).

On September 24, 2014, the South Carolina Supreme Court denied Petitioner's writ of certiorari. See Court Docket No. 18-4. The Remittitur was sent down on October 10, 2014. See Court Docket No. 18-5.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** Ineffective Assistance of Counsel. Mr. McElveen was ineffective in assistance [ ] because he failed to file a motion to reconsider my sentence after I called him the same day of my sentencing, and wrote him asking him to file such motion giving him new information that the victim would have been satisfied with a much lesser sentence.

**Ground Two:** Involuntary Guilty Plea. Mr. McElveen caused me to knowingly, voluntarily, and intelligently pled guilty after he coerced me into pleading guilty by informing me on the day of the hearing, to which I arrived not knowing if I was showing up for a trial or a plea hearing, and that Mr. McElveen would not go forward with a trial for me even though I had a defense to the assault and battery with intent to kill charge.

**Ground Three:** Wrongfully charged with assault/battery with intent to kill on Felicia Shiver and Karseen Hazel. The State of South Carolina based this charge on me saying that I hit Felicia on her forehead with a 10 lbs dumbbell. I told Mr. McElveen I did not and that it happen [sic] when we fell at the foot of the steps. She fell face down and I landed on her back. The dumbbells sets [sic] at the foot of the steps next to some boxes and book. Karseen Hazel was never a part of this and the hospital stated [sic] was not. (See Attached).

See Petition, pp. 6, 8-9; see also Court Docket No. 1-1, pp. 13-15.



## **Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11.  Further, while the federal court is charged with liberally construing  pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case;  See <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

### **I.**

In Ground One of his Petition, Petitioner argues that his trial counsel was ineffective for failing to file a motion to reconsider, while in Ground Two Petitioner contends that his guilty plea was involuntary and unintelligent because trial counsel coerced him into pleading guilty.  These claims were both addressed in Petitioner's PCR proceedings, where he had the burden of proving the allegations in his petition.  <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert. denied</u>, 474 U.S. 1094 (1986); <u>see</u> <u>also</u>  (R.pp. 94-103).  These claims were also presented on appeal to the State Supreme Court.  <u>See</u> Court Docket No. 18-2, p. 3.  Therefore, both of these claims were exhausted at the state level and are properly before this Court.

The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended.  <u>See</u> <u>Shiver v. State of</u>



South Carolina, No. 2011-CP-40-2739. Specifically, the PCR judge found that: 1) Petitioner testified during his PCR hearing that he met counsel in 1995 when counsel represented him on another unrelated matter; 2) regarding the incident from which the current charges stemmed, Petitioner stated he had moved back in with his ex-wife roughly three months earlier after she asked him to do so; 3) he stated her grandchild was living with them at the time as well; 4) on the night of the incident, Petitioner said he was cooking for his ex-wife's birthday when they got into an argument; 5) when his ex-wife asked him to leave the house, he testified he slapped her, following which a fight ensued; 6) he went on to say he didn't realize she got a "gash" in her head until later on that night and that he had never hit her with a dumbbell as the solicitor stated at the plea hearing; 7) rather, Petitioner said, during the fight the two fell down the stairs and landed on a weight at the bottom, where his ex-wife hit her head against the dumbbell; 8) Petitioner also alleged that he never held a screwdriver against his ex-wife's neck as stated at the plea hearing, but did tell his ex-wife to tell his Aunt Mae, who was on the phone at the time, that Petitioner had a screwdriver to her neck;

9) Petitioner testified that he believed all of the charges against him except the CDV were being dropped at the plea and, had that been the case, he would have been happy pleading; 10) he alleged counsel told Petitioner he would get Petitioner out of the charges "one way or another"; 11) Petitioner stated he told counsel he did not want to plead guilty to the charges, but that counsel kept saying he couldn't argue Petitioner's case; 12) he said counsel kept mentioning "malice forethought" and printed a copy of the Kinard v. State[4] case for Petitioner's review in that regard; 13) Petitioner said he didn't feel he should have been charged with ABWIK because he never intended to kill anyone and never hit his ex-wife with the dumbbell; 14) Petitioner also stated that after his

---

[4]646 S.E.2d 168 (S.C.Ct.App. 2007).



plea, he told counsel he had learned from his Aunt Mae Lloyd ("Lloyd") that his ex-wife did not want him to receive any more than five years in prison, but that counsel never followed up on that information to get his ex-wife to tell the Court that at his plea; 15) on cross examination, Petitioner said he had a prior CDV charge against his ex-wife from 2002 which would have been very damaging had the State found a way to get it introduced at trial; 16) he also conceded he had told the plea judge at his plea hearing he couldn't remember big portions of the incident, but said he was still sure he hadn't hit his ex-wife with the dumbbell or held a screwdriver to her neck at any point during the incident;

17) Lloyd testified she has been involved in Petitioner's life since he was young and had the chance to talk with counsel about Petitioner's case prior to the plea hearing; 18) she also noted she was the aunt on the phone with Petitioner at the time the incident occurred; 19) she went on to say that on the day of Petitioner's plea hearing, she received a call from Petitioner's ex-wife, who relayed that she "would be okay" with Petitioner receiving only a five year prison sentence; 20) Lloyd said she called counsel and let him know that information, and also gave counsel the ex-wife's phone number to call her; 21) Lloyd said she never talked to counsel after that time; 22) on cross-examination, Lloyd conceded that she was not at the house on the night of the incident and only knew what she heard over the phone during the altercation;

23) counsel testified that he had known Petitioner for a long time before this particular incident happened as he had represented Petitioner on non-criminal legal matters previously; 24) he went on to say that after being retained by Petitioner, he met with Petitioner to review the charges, indictments, potential sentences, discovery materials, and facts of the case; 25) counsel stated Petitioner knew from the beginning he was going to jail for a while, so he told counsel he didn't want



to file for release on bond; 26) counsel testified he and Petitioner discussed the option of going to trial versus entering a plea, and Petitioner was well aware of his ability to challenge the charges at trial; 27) he went on to say the solicitor was going to request a substantial amount of time on the charges and Petitioner was facing roughly sixty years imprisonment at 85% time on the charges, both of which he discussed with Petitioner; 28) counsel noted that his trial strategy was going to be based on Petitioner's continuous assertion that he never intended to kill anyone, which was a portion of the law counsel reviewed in depth with Petitioner during their meetings; 29) counsel also said he reviewed the "intent" requirement of the ABWIK charge with Petitioner and said he discussed with Petitioner that he didn't believe it was a very strong argument since the jury could infer general intent from the evidence, plus Petitioner had explicitly told the victim he would kill her during the assault which the victim was prepared to testify to;

30) counsel plainly stated Petitioner "knew he could challenge" the elements of the crimes at trial if he wanted to, but ultimately made the voluntary decision to enter a plea under an advantageous negotiated sentencing range extended by the solicitor; 31) counsel testified he never estimated a particular amount of time Petitioner should expect to receive, and that he did explain concurrent versus consecutive sentencing to Petitioner; 32) counsel said he recalled receiving a letter from Petitioner well after the plea in which Petitioner stated his ex-wife said she would be happy with him receiving only five years in prison; 33) counsel stated he had talked to Petitioner's ex-wife prior to the plea in an attempt to get her to request the minimum sentence for Petitioner at the plea, but she was adamant she would not "go along with the minimum" and wanted Petitioner "to do every day of the maximum sentence", which she requested on the record at the plea hearing; 34) counsel finished by noting he received the post-plea letter from Petitioner well outside of the ten days to file an appeal



8

or post-trial motion, and stated he didn't think the State would have any problem proving the "intent" element of ABWIK at trial;

35) after a thorough review of the record and the testimony presented at the hearing, the PCR Court found counsel was not ineffective in his representation; 36) the PCR Court found counsel's testimony to be credible, while conversely finding Petitioner's testimony to not be credible; 37) Petitioner failed to establish how counsel's performance was objectively unreasonable based on prevailing professional norms; 38) counsel reviewed the charges, potential sentences, Petitioner's constitutional rights, the facts leading to the charges, and the contents of the discovery file with the Petitioner well in advance of the plea to ensure Petitioner was aware of all relevant issues pertaining to his cases; 39) counsel credibly testified he reviewed the elements of each of the crimes with Petitioner, making sure to specifically note his explanation of the "intent" element of ABWIK, and Petitioner was fully aware of his ability to challenge those elements at trial; 40) while Petitioner's story of how the night unfolded might lend itself to more plausible defenses in hindsight, counsel spoke with the victim and was aware of her intention to testify at trial to a much more damaging set of facts than Petitioner disclosed; 41) further, Petitioner readily admitted under oath at his plea hearing he could not remember large portions of the incident; therefore, his adamant contention that he "did not" do certain things during the incident was not persuasive; 42) counsel personally spoke with the victim in an attempt to have her speak on Petitioner's behalf at trial; but she made it clear to counsel she would be requesting Petitioner do "every day of the maximum sentence" for his assault on her, regardless of what the victim may have told Petitioner's aunt in a private telephone conversation;

43) the PCR court found Petitioner entered his plea freely and voluntarily after being



fully and adequately advised of all relevant issues by competent counsel acting within the range of reasonableness based on professional norms; 44) regarding counsel's failure to file a motion to reconsider on Petitioner's behalf, counsel didn't receive Petitioner's letter setting forth his discontentment with the sentence until after the time period for filing had lapsed; 45) Petitioner pled guilty as part of a negotiated sentence and counsel had no reason to believe Petitioner would want to file such a motion absent Petitioner's letter; 46) accordingly, the PCR court found Petitioner's performance was objectively reasonable under prevailing professional norms; 47) further, Petitioner failed to show prejudice; 48) the record and testimony provided at the hearing firmly convinced the PCR Court that there was no reasonable probability that, but for counsel's alleged deficiencies, Petitioner would not have pled but rather would have gone to trial; 49) in return for the plea, Petitioner was given a very beneficial negotiated plea deal under which two of the three offenses were reduced to lesser included offenses and Petitioner was guaranteed not to do more than twenty years imprisonment; 50) Petitioner took the benefit of the bargain freely and voluntarily in an effort to avoid a much longer term of imprisonment; 51) Petitioner failed to carry his burden of proving that, but for counsel's alleged deficiency, he would not have pled but rather would have proceeded to trial on the charges; 52) except as discussed above, the PCR court found that Petitioner failed to raise all additional allegations raised in his application at the hearing and had, thereby, waived them; 53) Petitioner's failure to address these issues at the hearing indicated a voluntary and intentional relinquishment of his right to do so; and 54) therefore, any and all remaining allegations were denied and dismissed.  (R.pp. 94-103).  As noted, the South Carolina Supreme Court denied Petitioner's appeal challenging the PCR Court's findings.  See Court Docket No. 18-4.

Substantial deference is to be given to the state court's findings of fact.  Evans v.



Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, with regard to the ineffective assistance of counsel claims that were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State



11

court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Here, after a careful review of the record and the arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under the standard of Strickland and Hill, or that his guilty plea was not voluntarily and knowingly entered. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

A review of the record confirms that at Petitioner's guilty plea he affirmed to the plea court that he understood that the ABWIK charge carried a maximum potential sentence of twenty (20) years and was a most serious offense, that the ABHAN charge carried a maximum potential sentence of ten (10) years, and that the CDV 2nd carried a maximum potential sentence of one (1) year. (R.pp.



3-4).  Petitioner also affirmed that he understood that if he was convicted of two most serious offenses that he could be sentenced to life without the possibility of parole.  (R.p. 3).  The plea court informed Petitioner that he had a right to a jury trial, to offer defenses to the charges, and to remain silent during his trial, following which Petitioner affirmed to the plea court that he wanted to give up these rights and plead guilty with Petitioner's counsel informing the Court that Petitioner intended to enter an <u>Alford</u> plea on the aggravated assault charge.  (R.p. 4).  The plea court also informed Petitioner that his plea had a negotiated sentencing range of twelve (12) to twenty (20) years, and that if it did not accept the negotiated sentence then the case would proceed to trial.  Petitioner affirmed that he understood, testified that he was guilty of the charges, and that he wanted the plea judge to accept the guilty plea with the negotiated sentence.  (R.pp. 4-5).

The solicitor then recited the facts of the case for the Court including that Petitioner and Felicia Shiver, the adult victim, were legally married, but separated at the time.  (R.pp. 5-6).  The solicitor advised that Petitioner and Mrs. Shiver were having drinks together and got into a verbal altercation, that Mrs. Shiver asked Petitioner to leave the location, following which the physical abuse started even while Mrs. Shiver was holding a 22 month-old child.  The Solicitor continued that the Petitioner was punching Mrs. Shiver and the child victim both in the face, and showed the plea judge pictures that purportedly showed bruising on the child's face.  At some point, Mrs. Shiver put the child on the floor and Petitioner then began to drag Mrs. Shiver around the house while pulling her hair and even threw her against a wall.  (R.pp. 6-7).  The Solicitor provided other details, including that the altercation eventually ended up with Mrs. Shiver being placed in a bathroom closet.  The child was also in the bathroom, and the Petitioner poured vodka over both of them all while telling Mrs. Shiver that he was going to kill her and the child and for her not to leave the bathroom because



he was going to get a match.  Mrs. Shiver tried to flee, but Petitioner caught her and tried to choke

her, eventually dragging Mrs. Shiver to the bottom of a staircase where he used a 10-pound dumbbell

to smash her face and cause major lacerations.  (R.p. 8).

        The Solicitor then offered pictures of the actual wound that Mrs. Shiver suffered, and

reported that after temporarily losing consciousness, Mrs. Shiver regained consciousness to find that

Petitioner was holding a screwdriver to her and was on the telephone with his aunt telling her that if

she could not say anything to stop him that he was going to kill Mrs. Shiver and the child.  (R.pp. 8-

9).  Petitioner's aunt stayed on the line with him, but also picked up another telephone and called 911

and then remained on the telephone with Petitioner until the police arrived.  (R.p. 9).  The Solicitor

then explained that Mrs. Shiver had to have full facial surgery with 60 stitches in three different

layers, that her eyes were closed for approximately a month from the swelling, and that she still

suffered from some issues at the time of the plea.  (R.p. 10).

        Petitioner's counsel then stated that while Petitioner had some issues with the

Solicitor's monologue, that those issues did not change the fact that Petitioner was guilty.  (R.p. 10).

At the plea, an investigator (Pisarik) also testified that when he saw the victim her eyes were

blackened and shut, while Mrs. Shiver testified that, aside from being bruised and having a swollen

face, she had to undergo surgery to repair a laceration to her head for which she received more than

60 stitches in three different layers.  (R.pp. 12-13).  Mrs. Shiver also testified that this incident was

not the first time that she had been attacked by the Petitioner, and she then recounted almost identical

facts to those the Solicitor had cited.  (R.pp. 14-15).  After expressing her sympathy for the

Petitioner's family, she stated that she believed he should do every day of twenty years.  (R.p. 16).

The Solicitor then recited Petitioner's record, which included a CDV charge for the earlier assault on



Mrs. Shiver in 2002, and requested that the Judge sentence Petitioner to the maximum of the negotiated sentence range. (R.pp. 17, 19).

Petitioner's counsel told the Court that Petitioner had hit Mrs. Shiver, that he understood what he had done, and that he had no desire to minimize his conduct in the slightest degree. (R.p. 21). Counsel represented to the Court that Petitioner had told him from the beginning that he did not want any bond reduction, that he had no interest in getting out of jail, that he knew where he belonged, and that he did not want Mrs. Shiver to have to worry about the fact that he was on the street. (R.p. 21). Counsel also stated that Petitioner remembered when the attack began, remembered part of the incident, and that he remembered hitting Mrs. Shiver with the barbell. However, counsel told the Court that Petitioner had large gaps in his recollection of what happened, and that he did not have any recollection of the alcohol or striking the child. (R.p. 21). Counsel stated that Petitioner's striking the child was an accident and that he never intended to strike that child. (R.pp. 21-22). Counsel also asserted that Petitioner understood the case law, but adamantly denied any intent to kill Mrs. Shiver, and even called his aunt because he was shocked at what he was doing. (R.p. 22). Counsel expressed over and over how remorseful Petitioner felt over his actions, and asked the Court to give him the minimum sentence in the negotiated range. (R.pp. 20-24).

Petitioner then addressed the Court and apologized to Mrs. Shiver and her family. (R.p. 24). Petitioner represented that he had no intention of hurting the child and stated "I'm sorry this happened. I'm not denying that I did anything, but some things I don't think I intentionally did or did at all. But I can't say, because I can't remember." (R.p. 24).

There is no indication in this record that Petitioner's plea was not knowingly and voluntarily entered. Nor does the record from Petitioner's PCR proceedings contain any evidence



to justify an overturning of his plea or conviction.  At the PCR hearing, Petitioner's trial counsel testified he had represented Petitioner prior to this matter in some non-criminal matters and that Petitioner retained him to represent him on these charges.  (R.p. 45).  Counsel said that when he first got retained that Petitioner told him that he knew that he was going to be in jail for a long time and did not even want to have a bond hearing, because he might as well start his time and he did not want to bother anybody with a bond reduction hearing.  (R.p. 46).  Counsel testified that he advised Petitioner of the maximum potential sentences and of his options regarding going to trial, and that when it became obvious that the solicitor was seeking an extensive sentence, they had more extensive discussions regarding going to trial.  (R.p. 48).  While Petitioner maintained to counsel that he did not intend to kill anybody, counsel stated that he explained to Petitioner that his chances at a jury trial were not good and that if he lost on the facts in this case, he was going to get a whole lot of time. (R.pp. 48-49).  Counsel also discussed concurrent and consecutive sentences with Petitioner, and testified that he never was of the opinion that Petitioner was confused.  (R.p. 49).

Counsel also read part of a letter that Petitioner had written him after the plea requesting his records and expressing his discontent with his representation and sentence, but testified that he and Petitioner had been discussing his plea for months prior to it being entered,  reiterating that it was a negotiated plea.  (R.pp. 50-53).  Counsel also testified that he called Mrs. Shiver about a month before the plea and asked if she could go along with the minimum of twelve (12) years in the negotiated plea, but that Mrs. Shiver informed him that she wanted Petitioner to do every day of the twenty (20) year maximum sentence in the negotiated sentencing range.  (R.p. 53).  Counsel also testified that part of the difficulty with Petitioner's case with regard to denying intent was that the State had evidence Petitioner told Mrs. Shiver that he was going to kill her and discussed killing her



with his aunt, and opined that the defense that Petitioner did not intend to kill anyone was not going to be very successful. (R.pp. 55-57). Counsel testified that he did have conversations with the Petitioner's aunt wherein she told him that Mrs. Shiver would be satisfied with a light sentence, but that when counsel would talk with Mrs. Shiver, that was not the answer that he received. (R.p. 56). Counsel also testified that the letter he received from Petitioner was postmarked March 2, 2011, which was after the ten day deadline to file an appeal or post-trial motion. (R.p. 57).

Petitioner testified at his PCR hearing that he told his plea counsel about the actual physical altercation, that he and Mrs. Shiver were arguing and that she told him to get out, that he hit her, she slapped him, and they started fighting. (R.p. 61). Petitioner testified that Mrs. Shiver was not hit with the dumbbell, but that she fell down the stairs, he fell on top of her, and she landed on the dumbbell. (R.p. 62). With regard to the screwdriver, Petitioner testified that he told Mrs. Shiver to tell his aunt that he had a screwdriver to her neck, but that the screwdriver was on the table and he never had it to her neck. (R.p. 63). However, on cross examination, Petitioner also admitted that he told his counsel that he told his aunt on the phone during the incident that he was going to kill Mrs. Shiver. (R.p. 71). While Petitioner also stated that he was willing to plead to criminal domestic violence of a high and aggravate nature, he did not want to plead to ABWIK and expressed that sentiment to his counsel and that he wanted to go to trial. (R.pp. 64-65).

Petitioner testified that on the day of the plea when he was transported to the Courthouse he did not know that he was going to Court and told his counsel that he did not want to plead and wanted to go to trial. (R.p. 66). However, his counsel told him that he could not argue his case, and since Petitioner knew that he would be found guilty if his counsel did not argue it, he agreed to plead guilty. (R.pp. 66-69, 74). Petitioner testified that during a conversation shortly after his plea



he told his counsel that Mrs. Shiver had told his aunt after the plea that she only wanted him to receive five years, and also testified that he called his plea counsel the day he went back to county after his plea and that his counsel told him that he would come see him the next week, but that he never saw or spoke to his counsel after that phone call. (R.pp. 70-71). Ms. Lloyd also testified at the PCR hearing that she told plea counsel on the day of Petitioner's plea that Mrs. Shaffer told her that she would be satisified with Petitioner receiving a five year sentence. (R.pp. 82-83).

There is nothing in this record which establishes any entitlement to relief. The PCR court found Petitioner's counsel credible on these issues and that Petitioner was not credible, findings that are entitled to substantial deference on habeas corpus review. Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."]. While a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings (assuming that were to be the case). Further, given the deference due the state court's findings on this credibility issue, Petitioner has not shown that the state court's findings were unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference



due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."].

Additionally, in addition to being advised by counsel, it is clear in the record that the plea court also went over Petitioner's rights and potential sentences with him prior to the acceptance of the plea, following which Petitioner admitted he had committed the crime and entered his plea of guilty. Cf. Pittman v. South Carolina, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993)); see also State v. Lambert, 225 S.E.2d 340 (1976)); Roddy v. South Carolina, 528 S.E.2d 418, 421 (S.C. 2000). See Sargent v. Waters, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting Marshall, 459 U.S. at 431-432). Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Cf. Jeter v. State, 417 S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea].

Therefore, Petitioner has failed to establish that his counsel was ineffective or that his plea was involuntary because his counsel coerced him into pleading guilty, and there is nothing reversible in the state court's finding that his plea was knowing and voluntary based on the record of this case. Evans, 220 F.3d at 312. Criminal defendants often make the decision to plead guilty based



on a likelihood of conviction at trial, and although Petitioner now claims that his plea was involuntary, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d. 167, 171 (4th Cir. 1981). Here, Petitioner readily admitted his guilt, and he has failed to show his counsel was ineffective under the standards discussed hereinabove. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; see also Wade v. State, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; Hill, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial].

        With respect to Petitioner's complaint that his counsel did not file a motion to reconsider, the record shows that the testimony regarding the letter sent by Petitioner to his counsel addressing this issue was postmarked after the ten day period in which to file such a motion. (R.p. 57). Although Petitioner argues that he had also verbally told counsel that Mrs. Shiver had told his aunt that she would be okay with a five year sentence, Petitioner's counsel testified that this contention had been a "recurrent theme" throughout the case, but that when he actually spoke with



Mrs. Shiver she said she wanted Petitioner to do every day of the twenty year sentence. (R.pp. 53, 56). Again, the PCR judge found plea counsel's testimony on this issue credible and Petitioner's testimony not to be credible. Further, at the plea itself, Mrs. Shiver told the plea court about the dramatic nature of the beatings, her horrific injuries, and then stated "I do believe this man should do every day of 20 years;" (R.pp. 13-16); and Petitioner did not present any testimony from Mrs. Shiver in either his PCR proceedings or as part of this federal petition to support his arguments or to show that there was any change in circumstance that would have changed the outcome of his decision to plead guilty. Bassette, 915 F.2d at 941; cf. Bannister, 509 S.E.2d at 809 ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Lorenzen, 657 S.E.2d at 776-777 [Finding that Defendant's contention that witness' testimony would have helped his case was merely speculative where he did not call the witness to testify]; Dempsey, 610 S.E.2d at 814 [concluding that a finding of prejudice is merely speculative where a PCR applicant fails to have witness testify at the PCR hearing]; Kibler, 227 S.E.2d at 202 [the Court will not speculate concerning what might have occurred if counsel had conducted further investigation]; Clark, 434 S.E.2d at 267–268 [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different].

Therefore, Petitioner has failed to show he suffered any prejudice due to counsel's failure to move to reconsider, as he has failed to show that, even if his counsel had made this after-the-fact argument, the plea judge would have reduced his sentence. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].



Therefore, Grounds One and Two of the Petition are without merit and should be dismissed.

## II.

Petitioner contends in Ground Three that he was wrongfully charged with assault/battery with intent to kill on Felicia Shiver and Karseen Hazel, the child victim. Petitioner primarily argues that Mrs. Shiver was not hit with the dumbbell set, but that she landed on it when they fell down the stairs. With regard to the child victim, Petitioner contends that he was never part of the fight.

Petitioner failed to raise this issue in either a direct appeal or in his APCR proceedings. Therefore, it was not properly preserved for review at the state court level. State v. Powers, 501 S.E.2d 116, 118 (S.C. 1998); Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at  * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure



to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Because Petitioner did not properly raise and preserve the issue he now asserts in Ground Three in either his APCR proceedings or by way of a direct appeal, it is barred from further state collateral review; Whiteley, 401 U.S. at 562 n. 3; Wicker v. State, supra; Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this claim, it is fully exhausted. Coleman v. Thompson, 501 U.S. at 735; Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because this claim was not properly pursued and exhausted by the Petitioner in the state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766

23



(4th Cir. 1989), <u>cert. denied</u>, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman</u>, 501 U.S. at 750.

These potential avenues for relief are discussed hereinbelow:

### PCR Counsel

In his response, Petitioner argues as "cause" for failing to have raised this claim, that his PCR counsel was ineffective for failing to raise it in his PCR proceedings. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." <u>Murray</u>, 477 U.S. at 488; <u>see also</u> <u>Coleman v. Thompson</u>, <u>supra</u>; <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991); <u>Noble v. Barnett</u>, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause <u>per se</u> in the procedural default context"]; <u>Smith v. Dixon</u>, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).

However, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; <u>Ortiz v. Stewart</u>, 149 F.3d 923, 932 (9th Cir. 1998); <u>Bonin v. Calderon</u>, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute

24



"cause" for a procedural default. <u>Murray v. Giarratano</u>, 492 U.S. 1-7, 13 (1989) [O'Connor, J.,

<u>concurring</u>] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that

requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not

part of the criminal process itself, but is instead a civil action designed to overturn a presumptively

valid criminal judgment. Nothing in the Constitution requires the State to provide such

proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model

in those proceedings."]; <u>Mackall v. Angelone</u>, 131 F.3d 442, 447-449 (4th Cir. 1997); <u>Ortiz</u>, 149 F.3d

at 932; <u>Pollard v. Delo</u>, 28 F.3d 887, 888 (8th Cir. 1994); <u>Lamp v. State of Iowa</u>, 122 F.3d 1100,

1104-1105 (8th Cir. 1997); <u>Parkhurst v. Shillinger</u>, 128 F.3d 1366, 1371 (10th Cir. 1997); <u>Williams</u>

<u>v. Chrans</u>, 945 F.2d 926, 932 (7th Cir. 1992); <u>Gilliam v. Simms</u>, No. 97-14, 1998 WL 17041 at *6

(4th Cir. Jan. 13, 1998).

      However, in <u>Martinez</u> the Supreme Court did carve out a "narrow exception" that

modified

> "the unqualified statement in <u>Coleman</u> that an attorney's ignorance or inadvertence
> in a postconviction proceeding does not qualify as cause to excuse a procedural
> default." <u>Martinez</u>, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the
> "right to the effective assistance of counsel at trial is a bedrock principle in our justice
> system . . . . Indeed, the right to counsel is the foundation for our adversary system."
> <u>Id.</u> at ___, 132 S.Ct. at 1317.
>
> Second, ineffective assistance of counsel on *direct appellate review* could amount to
> "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a
> constitutional claim. <u>Id.</u> at ___, 132 S.Ct. at 1316, 1317. But States often have good
> reasons for initially reviewing claims of ineffective assistance of trial counsel during
> state collateral proceedings rather than on direct appellate review. <u>Id.</u> at ___, 132
> S.Ct. at 1317-1318. That is because review of such a claim normally requires a
> different attorney, because it often "depend[s] on evidence outside the trial record,"
> and because efforts to expand the record on direct appeal may run afoul of
> "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to
> investigate the ineffective-assistance claim." <u>Id.</u> at ___, 132 S.Ct. at 1318.

25



Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were <u>Coleman</u> read broadly) deprive a defendant of any review of that claim at all. <u>Martinez</u>, <u>supr a</u> at ___, 132 S.Ct. at 1316.

We consequently read <u>Coleman</u> as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." <u>Martinez</u>, <u>supra</u> at ___, 132 S.Ct. at 1318-1319, 1320-1321.

<u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1917-1918 (2013); <u>see</u> <u>also</u> <u>Gray v. Pearson</u>, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in <u>Coleman</u> that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default. <u>Coleman</u>, 501 U.S. at 757. The Court established an exception to that rule in <u>Martinez</u>."] Therefore, because, under South Carolina law, a claim of ineffective assistance of trial counsel is raised in an APCR; <u>cf.</u> <u>State v. Felder</u>, 351 S.E.2d 852 (S.C. 1986); <u>Bryant v. Reynolds</u>, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); <u>Gray</u>, 2013 WL 2451083, at * 4, fn *; a petitioner's claim of ineffective assistance of PCR counsel as "cause" for his default may be considered under the revised standard of <u>Martinez</u> and <u>Trevino</u>.

However, even though this exception has been recognized in <u>Martinez</u>, it does not help Petitioner with respect to this claim, as under the first requirement of the <u>Martinez</u> exception, the Petitioner must "demonstrate that the underlying *ineffective-assistance-of-trial-counsel* claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."



<u>Gray</u>, 2013 WL 2451083 at * 2 d(emphasis added). Here, however, Petitioner's claim targets the actions of the prosecutor, not his trial counsel. A claim of prosecutorial misconduct is not an ineffective assistance of trial counsel claim. Therefore, since the <u>Martinez</u> exception does not apply to Petitioner's claim, any alleged ineffectiveness of PCR counsel for failure to present this claim during Petitioner's PCR proceedings[5] cannot be "cause" for a procedural default of this claim.

### Direct Appeal Counsel

While Petitioner does not clearly assert a claim of ineffective assistance of appellate counsel as a possible "cause" for his failing to raise the issue of prosecutorial misconduct in a direct appeal, "ineffective assistance of counsel on direct appellate review [can] amount to 'cause', excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim." <u>Trevino</u>, 133 S.E. at 1917. Therefore, in light of Petitioner's <u>pro se</u> status, and giving his pleadings the liberal construction to which they are entitled, the undersigned has considered this issue as being a claim that Petitioner intended to present.

This claim is analyzed under the traditional <u>Coleman v. Thompson</u> analysis. <u>See</u>, discussion, <u>supra</u>. Under this analysis, this issue was procedurally defaulted at the trial/plea court level because South Carolina is an issue preservation state; <u>I'On, LLC v. Town of Mt. Pleasant</u>, 526 S.E.2d 716, 724-725 (S.C. 2000); and since this issue was not raised to the plea judge, it could not have been raised on direct appeal, even if Petitioner had filed an appeal (which he did not). <u>State v. Powers</u>, 501 S.E.2d at 118; <u>State v. Varvil</u>, 526 S.E.2d 248, 250 (S.C.Ct.App. 2000). Accordingly,

---

[5]Indeed, this would not even be a PCR issue. A claim of prosecutorial misconduct should be raised on direct appeal. <u>See</u> <u>Pruett</u>, 996 F.3d at 1564-1565 [Claims of prosecutorial misconduct are procedurally defaulted in federal habeas where they are not raised on direct appeal to state court and the state court would find them procedurally barred].



Petitioner cannot show any ineffective assistance of appellate counsel for failure to raise this issue on appeal, because it was not an issue that had even been preserved for appellate review. Therefore, Petitioner has failed to show cause for his procedural default even if his argument can be considered as relating to a direct appeal.

### Underlying Claim

Assuming (for purposes of summary judgment only) that Petitioner's argument in Ground Three is that his trial counsel was ineffective for failing to challenge his charges on these grounds, and further assuming arguendo that Petitioner could show cause based on his PCR counsel's failure to pursue this issue under Martinez, Petitioner still has not shown the necessary prejudice to succeed on this claim. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

The record contains evidence that Petitioner threatened to kill Mrs. Shiver and the child. (R.pp. 8-9, 55-56, 71). Additionally, at the plea hearing, the Solicitor presented facts to the court that Petitioner had dragged Mrs. Shiver to the bottom of a staircase, where he used a 10-pound dumbbell to smash her face and cause major lacerations; (R.p. 8); while Mrs. Shiver herself testified about Petitioner beating her up, giving her blows to her face, dragging her around the house, that her grandson was also subjected to these beatings, pouring alcohol on them, threatening to get a match, beating her on the back of the head with the coffee table, and knocking and choking her until she was unconscious. (R.pp. 15-16). Further, Petitioner's counsel told the plea court that, although Petitioner could not remember large portions of the incident, he knew that he hit her with the barbell; (R.p. 21); while the evidence also showed that Mrs. Shiver's face required over 60 stitches and that her eyes

28



were closed from the beatings for approximately one month.  (R.pp. 10-13).

Petitioner's argument that he was wrongfully charged with assault/battery with intent

to kill on Felicia Shiver and Karseen Hazel, the child victim, is without merit, as he has presented no

evidence to show that he was wrongfully charged.  State v. Coleman, 536 S.E.2d 387, 389 (S.C.Ct.

App. 2000)["[T]he manner in which the instrument was used, the purpose to be accomplished, and

the resulting injuries may also prove intent."]; see also State v. Sutton, 532 S.E.2d 283, 285 (S.C.

2000).  Accordingly, even if Petitioner's claim was that PCR counsel should have raised this issue

as an ineffective assistance of trial counsel claim, Petitioner has failed to show the necessary

prejudice.

### Actual Innocence

Finally, to the extent Petitioner is arguing that he is actually innocent, cognizable

claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere

legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee,

391 F.3d 147 (2d Cir. 2004).  Petitioner has failed to present any new, reliable evidence of any type

that was not presented in any of his prior court proceedings which supports his innocence on the

criminal charges to which he admitted his guilt in Court and plead guilty to the charges.  See Schlup

v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must

"support his allegations of constitutional error with new reliable evidence-whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or  critical physical evidence-that was not

presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for

a court to consider an actual innocence claim).  Further, Petitioner has also failed to make any

showing that a fundamental miscarriage of justice will occur if these claims are not considered.



<u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Ground Three for relief asserted by Petitioner in this habeas petition is procedurally barred from consideration by this Court.

### <u>Conclusion</u>

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

January 25, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

